The first case this afternoon is case number 4-17-0669, Winters v. MIMG et al. Counsel, could you state your appearances for the record? Ms. Castagna, are you ready to proceed? May it please the Court, This appeal arises from an order granting summary judgment to the defendants, the property owners, Arbors at Eastland, and its snow removal operator changing season, in finding that neither defendant owed a duty to plaintiff for an unnatural accumulation that blocked the sidewalk from plaintiff's apartment building to an adjacent building containing the on-site laundry facility. This Court should reverse the trial court's order for three reasons. First, the condition at issue, an unnatural accumulation, was not open and obvious as a matter of law. Two, even if this unnatural accumulation was open and obvious, there is a genuine issue and material fact as to whether defendants owed a duty of care under the deliberate encounter exception. And three, the trial court failed to analyze all four factors under the traditional duty analysis. The question in this case, of course, is whether the defendants owed a duty of care to plaintiff, which is a question of law. To determine whether a duty exists, the Court must ask whether the plaintiff and the defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. In determining whether this duty exists, the Court looks at four factors. First, foreseeability. Second, the likelihood of injury. Three, the magnitude of burden of guarding against the injury. And four, the consequences of placing that duty on the defendant. The first and the second factors relate to whether the condition is open and obvious and whether an exception applies. And the last two factors are the public policy considerations. So today I want to focus as to the second and the third issues. So whether a genuine issue and material fact remains as to whether the deliberate encounter exception applies. And looking at the four factors. I have to speak up a bit. I apologize. I have a cold. It affects my hearing and I'm trying to hear. Okay. Raise your voice, please. Yes, I will speak louder. The issues that I want to focus on today are the deliberate encounter exception and the factors under the traditional duty analysis. So even if this Court finds the unnatural accumulation was open and obvious as a matter of law, there's still a genuine issue and material fact as to whether the deliberate encounter exception applies. The trial court erred in finding that the deliberate encounter exception did not apply because the trial court viewed this condition based upon the reasonableness of the plaintiff and not the landowner, even though the language of the restatement plainly requires otherwise. And two, there is more than sufficient evidence in this record to raise a genuine issue and material fact as to whether it was foreseeable to the defendant that plaintiff would use the shortest and most direct path to the laundry facility. May I interrupt you for a moment? In terms of the deliberate encounter exception, under what circumstances, according to Illinois' common law, may someone invoke the deliberate encounter exception? And then, so that's Illinois' common law. I'd like you to also answer that according to the restatement. Okay. I would say under the common law, this deliberate encounter exception applies to situations where you can show that it was, I think they're the same. Let me start there. I think they're the same. You have to show that it was foreseeable on the part of the landowner that the plaintiff would choose this path, whatever path was chosen. You know, not ignoring, but deliberate. Let me make it easier. Yes. The counsel for the appellees in their briefs, well, maybe I shouldn't put them both in the same camp here, but I read, I believe, where counsel has suggested that the deliberate encounter exception may only be invoked in cases involving economic compulsion. Do you agree or disagree with that? I disagree. I disagree because the Illinois Supreme Court in the Slammy v. Eaton case provides guidance on that context because they said in that case, we are not saying that the deliberate encounter exception would only apply to situations such as in Lefevre where it was an employment situation. And I think this is that case because you have to look at, you know, not only this deliberate encounter exception, but you're also looking at the remaining factors under the traditional duty analysis. What's the economic compulsion, which the Supreme Court spoke of in the Slammy, which applies here? They didn't speak. Well, I mean, there was no economic compulsion. What they said in the Slammy was the plaintiff was jumping on a trampoline. And they said, well, obviously there's no economic compulsion in that case, but we're not saying that the only time a deliberate encounter exception would apply is in situations, you know, for employment or an economic compulsion. Well, they said the deliberate encounter exception has most often been applied in cases involving some economic compulsion. Are there any examples in Illinois where it's been applied where economic compulsion wasn't present? I don't think so.  I understand weasel language when I see it and appreciate it. That is, I think the Supreme Court of Illinois was correct to say that we do not hold deliberate encounter exceptions applicable only in the kind of situations involved in Lefevre and Rawls because who knows what the future might hold. But reading the tea leaves there, it seems to me the Supreme Court is saying, but while we are not rejecting it across the board, the idea of some economic compulsion is pretty much the standard, and if you don't have it, you're not likely to prevail. Isn't that really what they're saying? That's one way to look at it. I think they also say there's, you know, you have to look at the language of the restatement where it doesn't, you know, it doesn't say you need an economic compulsion in order to, you know, have a finding as to whether this deliberate encounter exception applies. You know, under the deliberate encounter exception, a duty is imposed when the possessor of land has reason to expect the invitee will proceed to encounter a known or obvious danger because to a reasonable man in his position, the advantages of doing so outweigh the apparent risk. Well, if you are the owner here of your arbors and there's been this huge pile of snow that's been plowed together, why would you think someone is going to walk through it as opposed to take an alternate route, of which there are at least two, to get to the laundry room? I would say in this case, it was absolutely foreseeable because it was on a sidewalk. The layout of this particular arbors at Eastland, I mean, the sidewalks border the parking lot. So obviously… He could walk around to the other sidewalk on the other side of the building to get to the laundry room, couldn't he? He could. Another 40 feet, maybe? I think it was a little bit longer, but either way, this was the shortest and most direct path to the laundry facility. And obviously… Was there evidence of that, that it was the shortest and most direct path? Other than his, you know, other than his testimony. There's no, like, you know, this was so many feet to this entrance and it would take this many feet to get around to the other entrance. And am I correct in saying that, according to the plaintiff's testimony, he visually observed the mound of snow on which he slipped prior to reaching a point in his path where he could have taken an alternate route to get to the laundry facility. He didn't have to turn around to take that path. In other words… Let me put it this way. Was it his testimony that he saw the mound of snow prior to reaching a fork in the road? And the fork in the road that he took took him past the mound, or over the mound of snow, whereas there was an alternate path that he could have taken to get to the laundry facility. What I remember is that he's saying that he comes out of his apartment complex. He goes down to the sidewalk bordering the parking lot. The choices are turn right, not the laundry facility way. Turn left to go down to the building by the laundry facility. When he reaches, turns left to go down that route, then he comes to another fork in the road, if you will, where he can go right or left. And going right is the shortest and most direct path. My memory of what he said is that he comes to that fork in the road, turns right, and as he's walking, he sees the pile blocking the sidewalk. Well, Arbor's, M-I-N-G Arbor's notes that he's reading, quote, by the time Plano reached the intersection of walkways, he had already observed the pile of snow and disregarded numerous unencumbered pathways available. Is that consistent with the evidence? I dispute that in terms of when he saw what and at what time. I don't think he said that when he comes out of the apartment complex, he can clearly see that there is a snow pile blocking this sidewalk, which is how I understood you're reading it. I mean, you'd have a stronger argument if he had committed to going down this particular path that he was on and then observed and encountered this pile of snow and then had to make a decision, do I turn around and retrace my footsteps to get to this alternative pathway? But as I understand it, that's not what he was faced with. He observed the mound of snow and then made a decision not to take the alternative pathway. Is that accurate or not? That's not how I remember his testimony. Okay. And I would say also, you know, we're talking a lot about the alternative path. And, again, I don't think that that is consistent with the restatement because if you're talking about alternative paths, then you're looking at this from the position of the plaintiff when the restatement requires to look at this in terms of what was foreseeable to the property owner. And, of course, a property owner would have foreseen that you're going to have both residents and visitors that are using this very sidewalk. And I think that's the issue that is a problem in terms of this alternative route argument. You also have the Supreme Court in Lefevre who talks about, you know, alternative route is not the way to look at the deliberate encounter exception. And, in fact, they rejected the defendant's argument in that case where they argued that unless there were no reasonable alternatives and the worker's continued employment was at risk, then the deliberate encounter exception would not apply. And in that case, the Illinois Supreme Court rejected the defendant's argument explaining that to decide foreseeability by measuring the reasonableness of the entrance actions and not those of the land owner would be inconsistent with the language of the restatement. There's also the case of Morrissey v. Arlington Park Racecourse, which is the first district case from 2010. That's another case where they argue that there was an alternative route. And with that alternative route, the defendants had tried to argue that the deliberate encounter exception would not apply. In that case, the first district, again relying upon Lefevre, found that, you know, this argument as to alternative routes is not determinative as to whether the deliberate encounter exception applies. And I would say in our case, there's, you know, obviously there's evidence in the records the defendants could have anticipated the plaintiff would deliberately encounter the condition, which covered the sidewalk in front of Building 10 and bordering the parking lot. And both Arbors and Eastland and Changing Seasons acknowledge the importance of keeping the sidewalks clear. So therefore, it would be, you know, our position that obviously a defendant could have anticipated the plaintiff would deliberately encounter the condition, which covered the sidewalk in our case. Now, as to the issue of whether, at the trial court level, the trial court failed to consider all four factors under the traditional duty analysis. So again, the first two factors relate to whether the condition is open and obvious and whether an exception applies. Obviously, it's our position that a deliberate encounter, there's a genuine issue of material fact as to whether the deliberate encounter. I'm sorry, it's your position that what? It's our position that the deliberate encounter exception does apply. And therefore, the first two factors under the deliberate, under the traditional duty analysis would weigh in favor of finding a duty. Okay, go ahead. As to the last two factors under the traditional duty analysis, these are the public policy considerations of the efficient placement of the burden. The Supreme Court has said that the weight to be accorded to the four factors depends upon the circumstances of any given case. And we would argue this is the case. In Illinois, I don't think it's disputed that if there's an unnatural accumulation, there's liability there. In this case, we, the negligence in this case is against changing seasons and their negligence, no removal of the drive lanes at Arbors at Eastland. They created this unnatural accumulation. I don't think you can dispute that they created the unnatural accumulation. And then you also have Arbors at Eastland who had employees on the property hours after this condition was created, this unnatural accumulation. They encountered the unnatural accumulation, were unable to take care of it themselves. But instead of, you know, calling the property owner or taking any measures to remedy the situation that they knew was a problem because it's on the sidewalk, they know that they have to clear the sidewalk because that's what they're there to do, they left the property. So this fall obviously occurred on a Sunday, to put this in context. And that's why the maintenance employees for Arbors at Eastland, Mr. Fordham, he testified that the next morning, so Monday morning, he came in to report the unnatural accumulation blocking the sidewalk to the property manager. And she testified, the property manager, she testified that she contacted Changing Seasons to come out and remove the unnatural accumulation from the sidewalk. And we would say, again, we would argue that in this case, you know, the magnitude of the burden of guarding against the injury that it places on Arbors at Eastland, the property owner is slight. Obviously, they undertook this duty to remove snow from its common areas. And under Illinois law, it has a duty to exercise ordinary care in accomplishing that task. The employees of Arbors at Eastland knew the condition was there, was unable to remedy it. What should they have done? They should have had a policy in place as to what to do if this happened on a weekend. They knew it was a problem, but they had no mechanism in place to contact the property owner on a weekend. In this case, they testified that they did not have a maintenance supervisor at the time, so no one overseeing the operations to ensure everything was done correctly. And instead of taking that next step to contact their property manager. Let's assume the property manager knows all about it, even is there and sees it. What should they have done? That the property manager saw it, and then. What should Arbors have done with the snow? They should have called Changing Seasons. They've talked about this also in the record. They've talked about how Changing Seasons had to be called back to the property on prior occasions to remedy conditions that they had created. The property manager had testified that Arbors at Eastland on a prior occasion, different area of the parking lot had piled snow on the steps. I believe it was the steps around the apartment building. The property manager called Changing Seasons and explained to them that they needed to have somebody come out and remedy that situation. As I recall, that property manager said that the owner of Changing Seasons was very apologetic and was saying that he just has very young maintenance workers and that he would take care of it. What should Arbors, what should Changing Seasons have done with all the snow? They should have piled it in a location other than the sidewalk. Where? You also have the testimony of the owner of Changing Seasons, who says that he could have piled the snow in an empty parking space in that parking lot. His defense was, well, you know, the property manager didn't tell me to do that. And my problem with that testimony is this should not be your first choice of where to pile the snow. How do we know how would Changing Seasons know? And what if there were no empty parking spaces? That is, let's assume for all we know, and I don't think the record shows otherwise, these are all parking spaces for the tenants. They're just going to fill up a parking space for a tenant with snow, and then what's the tenant supposed to do? That is a situation to consider. However, I think, again, there has to be a situation, there has to be an option other than placing it on the sidewalk where they know people will be walking. There has to be, like, in this case they said they were, initially the designated area was along the fence line, and Changing Seasons' owner had testified that that was full. Well, if there is an alternative route around the sidewalk and snow's got to go someplace, why is placing it on the sidewalk an inappropriate response? I think it's an inappropriate response because they know people will be there. I mean, the location of this. You know, I premise my question by indicating, I think the record shows, that to get to the laundry room or for some other reasons, people could walk around the snow that was piled up, couldn't they? I don't know if they could safely walk around the pile of snow. In this very instance, what stopped your client from walking around the pile of snow, taking an alternate route to the laundry room? I think it would be a much longer path to the laundry room, and again, I don't remember his testimony being that he saw this unnatural accumulation well before he even reached it. I see my time has expired, so I'd like to save time. You'll have time in rebuttal. Ms. Malati. Thank you, Judge. May it please the Court. Danielle Malati, here for Arbors at Eastland. The operative facts, those which are salient to the issues on appeal today, come from plaintiff's own testimony, and it demonstrates a number of things. We know plaintiffs lived at Arbors at Eastland for nine or ten years. We know he was aware of both entrances to the laundry facility, and we know that he knew he could access both doors through multiple pathways. He testified to at least four, not even to mention the pedestrian traffic in the parking lot, which was not only permitted but customary, as demonstrated by Eugene Fordham's testimony. So what happened on the day of the accident? Well, we know that it happened in broad daylight at 2 p.m. He was carrying a large basket of laundry that did not obstruct his view, and we know that because he testified that it didn't. And by plaintiff's own admissions, he saw the pile of snow as he was approaching it. He acknowledged, and these are his words, that ice forms under fallen snow. An accumulation of snow would be slippery, and it could result in a slip and fall injury. That's in his testimony. At what point on his trip did he observe the patch of snow that he fell on in relation to the intersection that I referenced in your brief? He had the opportunity to take a different route, is the best way to characterize the time that he had to contemplate that pathway. He had time to take a different route. Okay, he hadn't yet reached the intersection when he noticed the mound of snow that he fell on. He saw it prior to the intersection, yes. Oh, I'm sorry, counsel. In terms of that intersection, if he had taken the alternative route, the one he didn't take, but if he had taken the alternative route, was it established in the evidence that that was a longer route? No, not even a minor inconvenience, Your Honor. There's no evidence adduced in this case that would demonstrate a risk or a minor inconvenience of taking a different route. And I'm glad you mentioned that during the plaintiff's argument because it is true, they would have a much stronger argument if a slight inconvenience was demonstrated by the evidence in the record on appeal, but it's absent. Counsel says proof of an alternative route isn't relevant to the deliberate encounter exception. Counsel is correct, and that is not something that we are advancing at all. In fact, existence of alternative paths indeed does not negate legal duty, but the deliberate encounter exception imposes a duty where a landowner can reasonably expect that plaintiff will encounter an open and obvious condition. So when is that the case? And Your Honors discussed this earlier with respect to economic compulsion, but also it's important to look at the Lefebvre decision and the Morrissey decision. Both of those plaintiffs were acting under an economic compulsion. They were both employees. And the courts have even expanded the deliberate encounter exception to include any compulsion. Was plaintiff compelled to take that route? Did the risks, did the benefits of taking that route encumbered by the pile of snow outweigh the apparent risks that he testified to, that he explained with a great deal of detail at his deposition? No. I just want to make clear of your position here. You're saying that proof of an alternative route isn't relevant to the determination of whether or not the deliberate encounter exception is available? It is relevant to the extent that a landowner has a reasonable, whether the landowner's reasonable expectation that the plaintiff will encounter a hazardous condition when the landowner knows that there are alternative routes unencumbered by large, open and obvious hazardous conditions. Let's take a real simple hypothetical. Let's take the route that the plaintiff took and just say that there was a sidewalk that was running parallel to the sidewalk he was on, just separated by two feet. So you have two sidewalks running parallel. One of them is blocked by the mound of snow that he slipped and fell on. The other one is clear. If you have this alternative path that is clearly no more cumbersome or time-consuming to take, there isn't the evidence of that alternative path relevant to the inquiry of whether or not the deliberate encounter exception can be utilized by the plaintiff? In other words, isn't proof of the alternative path relevant to the landowner's reasonable expectations? Well, certainly, and it would suggest that the landowner has a reasonable expectation that the plaintiff would take the other route. So this isn't a situation where the plaintiff was distracted. There was no lapse in time during which plaintiff forgot about the pile of snow. And it's important to talk about this because these are the two exceptions that the courts have used to analyze the first two factors of the four-factor duty analysis, reasonable likelihood and foreseeability. These exceptions have never been pled. They've never been argued. No facts have been adduced to support either. But while plaintiff is not advancing any of these arguments, the cases cited throughout the briefs, the cases explained to you earlier in during oral arguments, all involve plaintiffs who did experience distraction, who did experience a lapse in time during which they forgot about the hazard. So what's left? This then becomes a question of duty. In Dabur, plaintiff was distracted. In Ward, plaintiff forgot about the hazard. So since we have plaintiff's argument, which is essentially twofold, plaintiff alleges there remains a triable fact as to whether the deliberate encounter should apply. But what plaintiff failed to do is draw this court's attention to what fact exists. Where's the fact? The evidence adduced in this case demonstrate that the exception does not apply. So if plaintiff is presumed in the eyes of the law to exercise, to be able to exercise reasonable ordinary care, possess astute judgment, avoid risks, he is no exception to that expectation under the law. And the court need not look further than plaintiff's own words to understand that he was aware of the risk. He knew what was coming. He even testified specifically that ice is slippery and hardens under falling snow. So since the exceptions set forth by Ward and Dabur don't apply, then the question of, indeed, the entrance to the magnitude of the burden of imposing a duty on the landowner. So the Illinois courts do not impose a duty to guard against people in an obvious condition, which carry their own warning, like Lake Michigan, Bucolaris. The courts did not impose a duty because it carried in and of itself its own warning sign, just much like a large pile of snow. So the deliberate encounter imposes only a duty where a landowner can reasonably expect that a plaintiff will encounter a known or obvious risk. So we already know that he wasn't acting out of a fear born out of an economic loss, or so there's no economic compulsion. There's no compulsion, period. He was not compelled. The advantages of encountering the pile of snow did not outweigh the risks that he testified to in detail at his deposition, which remains undisputed. Lefevre involved, of course, in alternative route analysis, but he was also acting under economic compulsion. Morrissey, he testified that time was of the essence. He had to complete his job in a finite amount of time, and he only had 15 minutes to do so, or a limited amount of time to do so, so we can't even consider those cases. The plaintiff was not doing his job. He was doing his laundry. Just like in Hastings, the same considerations were contemplated. The plaintiff knew of the peril. She voluntarily encountered the hazard despite knowing of the hazards it presented, and that's what she testified to. In fact, her alternative route led to a locked door, but in that case the court did not consider a locked door sufficient to present as an obstacle. That was not a real obstacle. Is it your position that these cases stand for the proposition that the deliberate encounter exception is available only to those under economic compulsion? No. My position is that it can even be expanded to a compulsion. So if, for example, an economic compulsion or when the risks, when the benefits of encountering the hazard outweigh the risks of encountering the hazard, and no risk, no obstacle, not even a slight inconvenience mentioned in plaintiff's deposition or adduced in evidence to suggest that there was a benefit in encountering the pile of snow. There was no testimony that, yeah, it could have gone this way, but it would have taken a lot longer or? No. Nothing? No. Plaintiff did not present any testimony that the benefits outweigh the risk. In fact, he was more detailed when he explained the risks. And the undisputed facts demonstrate that plaintiff made a voluntary choice, a decision to proceed while knowing of and understanding the obvious risks, which by his own admission would result in a slip and fall injury. Again, plaintiff's words. The trial court properly granted some judgment because there remains no additional fact as to whether this large pile of snow was open and obvious. He saw it well in advance. There remains no question of fact as to whether the deliberate encounter exception applies, as he was not acting out of an economic compulsion or any compulsion borne out of a fear or a compulsion to pursue the benefits of encountering the pile of snow as compared to the risks that he explained. This is a question of law, not a question of fact. And the facts induced leave no triable issue for a jury. Law is clear, and for all these reasons, I respectfully ask that this court affirm the trial court's order granting Barber's motion for summary judgment. Okay, thank you. Ms. Snow. May it please the court and counsel, my name is Barbara Murdo. I represent. I'm sorry. I said Ms. Snow. I have snow on the brain, but I know it's Snow Murdo. I apologize. Thank you. That's all right. I still answer to that name occasionally. I represent Changing Seasons Lawn and Landscape. This is a straightforward slip and fall on snow and ice, where the facts about the nature of the condition that caused plaintiff to fall are undisputed. The trial court was correct in granting summary judgment to both defendants based on lack of duty. Under the four-factor duty test for negligence, each defendant owed a duty to protect the plaintiff under the circumstances presented by this evidence. The large pile of snow and ice upon which plaintiff fell, as well as the risk that it posed, were open and obvious to a reasonable person as a matter of law. And the trial court was correct in its assessments both that the danger was open and obvious and that the deliberate encounter exception has no application to the facts. Ms. Murdo, may I ask you to explain to all of us here how it is that we apply the traditional duty analysis in a case where the deliberate encounter exception is being invoked, or sought to be invoked, relative to City of Centralia? Do you understand City of Centralia and how it is that a court is to review a case like this? I apologize, I am not familiar with the decision you're signing. City of Centralia. That's the Illinois Supreme Court case that involved an open and obvious danger. I'm sorry, I thought you had addressed it in your brief, and I'll ask Ms. Castagna. I believe you did. Maybe you didn't. All right. In any event, let's take City of Centralia out of it. How do you, or do you, apply the traditional duty analysis when you have an open and obvious danger case? Certainly. Well, in all negligence cases, you have a four-factor duty analysis. The open and obvious danger doctrine goes toward the first two factors in the analysis, the likelihood of injury and the reasonable foreseeability of injury. What the Supreme Court told us in Buklari's v. Chicago Park District is that where the condition is open and obvious, the first two factors in the test weigh heavily against imposing a duty. The deliberate encounter exception, my understanding based on the court's reasoning in Ward, is that the deliberate encounter exception then goes toward the second of the two factors, the reasonable foreseeability of injury, such that where a defendant can anticipate that there will be some compulsion on the plaintiff to go ahead and deliberately encounter it, in that circumstance, there might be some reasonable foreseeability of injury. So I think that's where that, how the deliberate encounter exception and the open and obvious danger rule relate to the four-factor duty test. Okay, thank you. Under that test, you know, both the likelihood of injury and the reasonable foreseeability of injury are slight in cases involving open and obvious conditions. In this case, the application of the four-factor duty analysis demonstrates that changing seasons owe no duty to protect plaintiff from the open and obvious risk of attempting to traverse the snow pile that changing seasons allegedly created. The first two factors, likelihood of injury and reasonable foreseeability of injury, are slight because the undisputed testimony concerning the physical description of the snow pile indicates that the condition and its risks were apparent to and would have been recognized by a reasonable person in the position of a visitor exercising ordinary perception, intelligence, and judgment, which is the standard for determining whether the risk is open and obvious. The third factor, the magnitude of the burden of guarding against injury, also weighs against imposing a duty on changing seasons in this case. As plaintiff acknowledges, he slipped and fell as he was attempting to walk through a cutout in the snow mound that appeared to him to have been created by prior foot traffic. So even if plaintiffs were able to establish that changing seasons initially created this mound of snow and placed it on the sidewalk, it would impose a burden of considerable magnitude on changing seasons to require it to monitor the snow pile on someone else's property in order to attempt to prevent other people from subsequently modifying it or altering it to create this cutout and sloped icy surface on which plaintiff claims to have slipped. The evidence in this case is that this was a record snowfall season, that all of the designated areas for plowed snow at the arbors were full by the end of December 2013, which would have been two to three weeks prior to plaintiff's injury, and that changing seasons had to put any freshly plowed snow anywhere they could find room for it except that they couldn't block the arbor's maintenance shed, they couldn't block fire hydrants, and they couldn't block parking spaces and parking lots because it was their job to clear those parking spaces and parking lots. There was no grass, no lawn area? There were grassy areas, and this sidewalk was adjacent to a grassy area. So when you're talking about the magnitude of the burden guarding against it, it's not that we either have snow in the parking lot or snow on the sidewalk. I mean, you could put snow on the grassy area, right? That's true, and this plowing is occurring at 245 to 530 in the morning when it's dark, and there's some suggestion in the testimony that an attempt was made to put it onto the grassy area and that perhaps it spilled over into the adjacent sidewalk. But the clearing of the sidewalks themselves were outside the scope of changing seasons work, as was hauling the snow offsite. So, you know, plaintiff's assertion that it was negligent to allow plowed snow to cover any part of the sidewalk is just not supported by the evidence, whereas it would be a minor inconvenience for pedestrians such as plaintiff to simply walk around a snow pile that blocks his path instead of trying to climb over it or through it or turn around and take any of the other alternate routes that were available. The consequences of placing the burden on changing seasons similarly weigh against finding a duty in this case. Changing seasons didn't own or control the property, so they had no ability to prevent others from making modifications to the snow pile or erecting barricades or warning signs. In Barber v. GJ Partners, which is a case that the plaintiff cited, this court recognized the public benefits of shoveling and plowing snow-covered parking lots in this part of the country during the winter and recognized that the task rarely can be performed perfectly. When you plow snow from one spot to another, by definition you're creating an unnatural accumulation somewhere. If the act of creating an unnatural accumulation of snow will in every case subject a snow removal contractor to liability, we're not going to have snow removal contractors for very long. Before you run out of time, you cite the Hastings and Bonavia?  Is that the other case? Yes. A plaintiff suggests that those two cases are inapposite, that they involve the assumption of the risk and were decided prior to the? Salami. Yes. So how does Hastings apply here? Well, in Hastings and Bonavia both, in those cases, even though there wasn't a strict economic compulsion on the defendant, the courts recognized that encountering the risk must have really been the only option available to the plaintiff in order for the deliberate encounter exception to apply. The existence of alternate routes in those two cases conclusively did establish that the plaintiff could have avoided the risk entirely. Hastings was the case where the woman walked down the icy snow-covered back stairs of her mother-in-law's home when she could have simply walked out the front door. There was no economic compulsion at all in the case. She did it for her own convenience. And what the courts are telling us there is that your own convenience is just not enough. There has to be something truly compelling you to make that bad choice to encounter the open and obvious risk. And it's the same in Bonavia where the, I would say, dock space owner who had walked down an algae-covered boat ramp. And there were alternate routes available. There was a business invitee rather than a social guest, but the analysis is the same. There were alternate routes, so there was nothing compelling him to make that bad choice. Thank you. I appreciate the time and changing seasons request that you affirm the judgment below. Thank you. Thank you. Rebuttal argument? In response to what Arbers at Eastland has argued, just based upon their argument today, it really seems as though what they're saying is once you find a condition as open and obvious, like that's the end of the analysis. And I don't think that's correct. I think you have to consider, again, we argue that deliberate exception, deliberate and counter-exception would apply, and you have to look at these public policy factors. And, again, looking at the law in Illinois says that you are responsible for an unnatural accumulation, period. In this case, changing season is the person that created this unnatural accumulation. They cannot dispute that. They chose this area, this sidewalk where they know people will be using it, to place this unnatural accumulation. There should be a duty for that. As to Arbers at Eastland, they had people on the property. They knew that this unnatural accumulation was blocking the sidewalk. And it wasn't just some obscure part of the sidewalk. This was the place where people would enter not only entrances to building number 10, but also to their cars parked in parking lot number 2. So I think you have to look at these public policy factors and determine, you know, are you going to let this open and obvious argument outweigh the fact that we have, you know, they have a duty under Illinois law to remedy unnatural accumulations. Again, we would just argue in terms of changing seasons address the last two factors under the traditional duty analysis. And we would argue the efficient placement of this burden of avoiding the injury is on changing seasons. All it took for them to do is actually check their work before they left that morning, which apparently was not done in this particular case. In terms of the consequences of imposing this duty, it's also equally negligible. Again, a snow removal contractor would be liable for any injuries that it creates or aggravates an unnatural accumulation. And imposing a duty in this case would simply require changing seasons to perform its snow removal operations in a manner that doesn't, you know, risk the safety of tenants and visitors on the property. And in terms of, you know, arbors at Eastland, the same is true. Under the traditional duty analysis, the efficient placement of this burden of avoiding the injury is on the property manager. And the consequences of imposing that duty is not expanding or creating any additional duties under Illinois law. So for these reasons, we would ask that the court reverse the trial court's finding and remand for further proceedings. Thank you. All right, thank you. Thank you all. The case will be taken under advisement in a written decision settles.